MATTER OF R—

In DEPORTATION Proceedings

A–11030269

*Decided by Board August 7, 1961*

Excludability—Section 212(a)(4)—"Exhibitionism."

"Exhibitionism" is a form of sexual deviation requiring exclusion of an alien so afflicted at time of entry under section 212(a)(4) of the Act as a psychopathic personality.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under section 212(a)(4) [8 U.S.C. 1182(a)(4)]—Psychopathic personality (sex deviate).

## BEFORE THE BOARD

**DISCUSSION:** This is an appeal from the order of the special inquiry officer requiring respondent's deportation upon the charge stated above. The appeal will be dismissed.

Respondent is an alien, a 27-year-old single male, a native and citizen of Germany, who was admitted to the United States for permanent residence on January 19, 1957. He made several short visits to Mexico from 1957 to 1958, the last being for a few hours on June 15, 1960. The Service charges that he was a sex deviate (an exhibitionist) at the time of his entry and was, therefore, excludable as a psychopathic personality.

A psychopathic personality is inadmissible to the United States (section 212(a)(4), Immigration and Nationality Act; 8 U.S.C. 1182 (a)(4)). A sex deviate is by declaration of Congress classified as a psychopathic personality (*Fleuti* v. *Hoy*, unreported, U.S.D.C., S.D. Cal., No. 1275—59–K Civil, Jan. 4, 1961; *Matter of S—*, 8—409; *Matter of P—*, 7—258). The questions, as we see them, are:

(1) Is exhibitionism a sexual deviation?
(2) Is respondent an exhibitionist?
(3) Did respondent's condition exist at the time of his last entry?

Exhibitionism is defined as:

The display of one's body or parts (even the genitals), for the purpose, conscious or unconscious, of attracting a sexual interest (*United States* v. *Flores-Rodriguez*, 237 F.2d 405, 410, C.A. 2, 1956, quoting Dorland's *American Illustrated Medical Dictionary*, 22d ed.).

"Sexual deviation" is not a defined term, however, the history of legislation with which we are concerned reveals that the term is intended to cover homosexuals and sexual perversions of the nature of "sexual sadism, fetishism, transvestism, pedophilia, *etc.*" *Matter of P—*, 7—258, 261–263. This list of sex perversions reveals that the prohibited sexual behavior is not restricted to unnatural relations. "Exhibitionism" appears to be of the same abnormal nature of sexual behavior as fetishism and transvestism and would, therefore, be a sexual perversion or deviation contemplated by section 212(a)(4) of the Immigration and Nationality Act. We note also that Dr. Conrad, a Government witness whose qualifications as a psychiatrist are conceded, considers an exhibitionist as a sexual deviate.

The special inquiry officer, in a lengthy discussion, concluded that respondent is an exhibitionist. Respondent argues that he is not an exhibitionist because he did not expose himself. He admits that he was engaged in a sexual irregularity which is not relevant to the charge, and that this occurred while he was in his car on a public thoroughfare, but alleges that he took pains to hide his action. We do not think that this defense is sustained. Testimony in contradiction of the defense comes from admissions against interest made by respondent, the fact that his conduct led to complaints by the public and to his arrest and conviction on two occasions—once as a lewd or dissolute person and once for indecent exposure. (We believe that it is proper to give greater weight to respondent's admissions against interest rather than his self-serving statements even though he was not represented by counsel when the admissions against interest were made (*Matter of S—*, 8—409, p. 417)).

It is alleged that respondent lacked facility with the English language at the time he made admissions against interest. The record does not appear to support this contention. Respondent's answers appear quite responsive and were elaborated upon from time to time. When respondent did not understand, he made known his lack of understanding. He initialed each page. Corrections were made by him at his request. Moreover, no objection was made to the introduction of the admissions into the record at the hearing, although counsel was permitted an opportunity to make his objections.

Counsel's contention that respondent's remorse at having done something wrong (although the action fell short of exhibitionism)

394

may have influenced him to make admissions which were not factual, has been considered but must be rejected in light of the evidence of record. We need not be bound by respondent's belief that he was not attempting to expose himself in view of the objective conditions which existed.

Counsel takes strong issue with Dr. Conrad's finding that respondent was a sexual deviate. Counsel points to errors in notes made by the witness when he interviewed respondent. We have carefully examined these allegations. They do not require extended discussion. The errors are of a minor nature, e.g., whether respondent was arrested two rather than three times, and whether the arrest was in Hollywood rather than North Hollywood. The discrepancies were brought to the attention of Dr. Conrad who did not change his diagnosis. Counsel complains of error in Dr. Conrad's opinion that respondent failed to consult a psychiatrist for treatment. We believe that Dr. Conrad properly evaluated the situation. The necessity for inquiring into the reasons for respondent's pleas of guilty has not been shown. While Dr. Conrad found significance in the fact that respondent was living with another male, we note no strong inference was taken from this and that the fact was considered merely one item of interest in the taking of a sexual history. We believe the record establishes that respondent is an exhibitionist.

The question now is whether the deviation existed at the time of respondent's last entry. We believe it did. The record of several exposures in 1958 and several in 1960 convinces us that respondent's behavior is persistent and deep seated. We note that the occurrences in 1960 were after he had received official punishment for doing the very same type of acts. The last act occurred in February 1960. Respondent received no medical treatment after this act. His last entry occurred just a few months after these acts. The persistence of respondent's conduct rules out the possibility that it was the result of an experiment out of curiosity or the reaction to a highly upsetting experience. We are satisfied that this deep-seated affliction existed at the time of respondent's last entry. (Of course, if it existed at the time of any of his entries he would be illegally in the United States.)

ORDER: It is ordered that the appeal be and the same is hereby dismissed.